■ NOAH SHAW, Appellant, v. JEWEL RADIO CORPORATION et al., Respondents, et al., Defendant.— In an action based on violations of section 15 of the Stock Corporation Law, the appeal is (1) from a judgment dismissing the complaint on the merits after trial, and (2) from the decision directing the entry of said judgment. Judgment reversed on the law and the facts and a new trial granted, with costs to abide the event. On December 14, 1950 respondent Jewel Radio and Television Corporation of America, hereinafter referred to as the corporation, adopted resolutions to effectuate its liquidation and dissolution on or before December 30, 1950. Its attorney had advised that this action be taken in a letter dated November 27, 1950. For some time up to December 14, 1950, or at least up to about that date, the corporation was indebted to some 14,000 customers who had paid money to it in advance in connection with their orders for the shipment of certain radios, and the radios had not been shipped. Evidence was adduced on behalf of respondents that at about that time the corporation purchased the requisite radios from respondent Jewel Radio Corporation, hereinafter referred to as the transferee, for which the latter billed the corporation in the amount of $224,000. Respondents claimed that the radios were then shipped to the said customers of the corporation. It further appears that the corporation was otherwise also indebted to the transferee and the appellant in large amounts. In December of 1950 the corporation made three payments to the transferee totaling $199,479.36, namely, $74,479.36 early in the month, $100,000 on December 22 and $25,000 on December 29. In addition, its inventory, valued at $47,638.54, was turned over, upon dissolution, to the transferee. This made a total of $247,117.90 in payments and transfers to the transferee. Evidence to the effect that the corporation was insolvent during this period of time was not refuted. Respondent Ferraro was the sole stockholder and an officer and director of both the corporation and the transferee. With the fact of the corporation's insolvency established, and the element of intent to give a preference to creditors of the corporation other than the appellant, namely, the thousands of its said customers and the transferee, established by evidence which includes the factor that the corporation was liquidating and proceeding to dissolve (see *Dutcher* v. *Importers & Traders' Nat. Bank,* 59 N. Y. 5; *Sherwood* v. *Holbrook,* 188 App. Div 712, affd. 231 N. Y. 533; *Childs* v. *County Trust Co. of N. Y.,* 6 F. Supp. 821, 823, affd. 70 F. 2d 1012), the cause of action under section 15 of the

Stock Corporation Law was established against the transferee, to require it to account to appellant as a creditor of the corporation, and against respondent Ferraro, to impose liability upon him personally. There was evidence to the effect that the transferee did in fact ship a large quantity of packages, purportedly in fulfillment of its bill to the corporation for the radios for the 14,000 customers, and there was no evidence that the radios, or any of them, were not shipped. This evidence would support conclusions that the transferee had given good and present consideration to the extent of $224,000, the price charged to the corporation for the radios, and that, therefore, to that extent the payments and transfer of inventory to the transferee did not constitute invalid preferences to the transferee, Jewel Radio Corporation (*Ackerbaum* v. *Gracelyne Fashions*, 267 App. Div. 119, affd. 293 N. Y. 834; *Rankin Co.* v. *Langer Print Co.*, 239 App. Div. 681; and *Matter of Stern & Co.*, 54 F. 2d 478). However, had appellant's theory of action included a claim that the payments and transfers to the transferee were intended to, and did, effectuate preferential transfers to the corporation's said customers, in the form of the radios, the evidence would support findings and judgment favorable to appellant upon such claim, as against respondent Ferraro. The general rule of damages in a case such as this is that a plaintiff may recover the amount of money which he would have received as a creditor if no preferential payments and transfers had been made and if the subject corporation's assets had been distributed to all its creditors in proportion to the respective amounts of their just claims. Damages in the amount of a plaintiff's entire claim up to the full extent of the value of the preferential payments and transfers, in other words, not limited to a prorata share, are awarded only in the exceptional case where an actual levy had been made on the property in question by virtue of an execution issued in pursuance of a money judgment in favor of the plaintiff against the debtor corporation (see *Lodi Chem. Co.* v. *National Lead Co.*, 41 App. Div. 535; *Trustees of Masonic Hall & Asylum Fund* v. *Fontana*, 99 Misc. 497; *Doehler* v. *Real Estate Bd. of N. Y. Bldg. Co.*, 150 Misc. 733). Appellant's judgment was not obtained, and execution was not issued thereon, until some time in 1952, more than 21 months after the corporation's liquidation and the making of the preferential payments and transfers. The above-mentioned general rule of damages, therefore, would be applicable. However, the present record is inadequate to furnish a basis for computing damages. The interests of justice require a new trial, at which the theory that the shipments of radios were in effect preferential transfers may be pursued (this might be dependent upon a successful application to amend the complaint) and adequate proof to establish what the amounts of the corporation's assets and liabilities were at the time or times in question may be presented, for the purpose of computing damages. Appeal from decision dismissed, without costs. No appeal lies from a decision. Nolan, P. J., Wenzel, Murphy and Kleinfeld, JJ., concur; Beldock, J., concurs, with the following memorandum: In addition to the evidence to be adduced as indicated in the court's memorandum, evidence should be adduced, in my opinion, with respect to the deposit and disposition of the money received from the customers for the radios in order to determine whether the transferee is entitled to a credit of $224,000 as against any preferential transfers.